IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT PAPYRO THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Magistrate No. 23-1071 |

**AFFIDAVIT IN SUPPORT OF
<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, Kevin Iwanski Jr., being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

1. I am a Special Agent with the United States Treasury Department, Internal Revenue Service – Criminal Investigation (IRS-CI) and have been so employed since April of

2020. I am presently assigned to Pittsburgh Post of Duty of the Philadelphia, Pennsylvania Field Office. As an IRS-CI special agent my responsibilities include investigating potential criminal violations of the Internal Revenue Code (Title 26, United States Code); the Money Laundering Control Act (Title 18, United States Code); the Bank Secrecy Act (Title 31, United States Code) and related offenses.

2. On November 27, 2020, I successfully graduated from the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia. The CITP curriculum is accredited by the Federal Law Enforcement Training Accreditation (FLETA) Board and teaches subjects including but not limited to constitutional law, federal criminal law, and electronic law/evidence. I was presented an award in CITP for demonstrating exceptional proficiency in academic achievement.

3. On March 5, 2021, I graduated from Special Agent Investigative Techniques (SAIT) at FLETC in Brunswick, Georgia. SAIT is an approximate three-month training program taught by the National Criminal Investigation Training Academy (NCITA) of IRS-CI. NCITA is a FLETA accredited training academy. In SAIT I received extensive training in how to conduct complex financial investigations into violations of Title 18, Title 26, and Title 31 of the United States Code.

4. After completing CITP and SAIT, I participated in an On the Job training program wherein I worked with and demonstrated my ability to perform essential job functions to IRS-CI special agents with many years of experience and specialized training. During my participation in the program, I have participated in the service of approximately nine search warrants, most of which included the collection of digital evidence.

5. As an IRS-CI special agent I participate in yearly mandatory briefings and continuing professional education trainings to stay current on evolving legal decisions and financial investigative matters.

6. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that JOHN W. ALLAN JR. ("ALLAN") filed false individual income tax returns for tax years 2020, 2021, and 2022 in violation of 26 U.S.C. § 7206(1), and mailed fireworks through the United States Postal Service, in violation of 18 U.S.C. § 1716(a). There is also probable cause to search the information described in Attachment A for fruits, evidence, and instrumentalities of these crimes as further described in Attachment B.

## JURISDICTION

8. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9. On June 8, 2022, law enforcement obtained three federal search warrants, in cases numbered 22-838, 22-840, and 22-841, authorizing the search of Priority Mail parcels being sent through the United States Postal Service (USPS), addressed to individuals in Hawaii and believed to be sent by ALLAN with fictitious details in the return address

area. The three parcels ranged in weight from 28 pounds 5 ounces to 36 pounds 8 ounces and all contained fireworks.

10. On June 13, 2022, law enforcement agents from the United States Postal Inspection Service (USPIS) in Hawaii interviewed the intended recipient of one of the searched parcels ("The Hawaii Recipient"). The Hawaii Recipient cooperated with USPIS and admitted to ordering fireworks from a supplier in Pennsylvania identified as ALLAN. The Hawaii Recipient ordered the fireworks from ALLAN via telephone and through Instagram, where ALLAN used the name "PAPYRO." Per information provided by Instagram "PAPYRO" and other usernames are vanity names and can be changed by the account holder. The Hawaii Recipient told investigators "PAPYRO" was the Instagram account in use by ALLAN on or about the time of the interview. This assertion was further substantiated when The Hawaii Recipient told interviewers the operator of the "PAPYRO" Instagram account said they had recently purchased a house. Investigators independently discovered ALLAN had purchased his home located at 2105 Old State Highway 711, Jones Mills, Pennsylvania 15646 on or about May 25, 2022. The Hawaii Recipient said they mailed approximately $20,000.00 to ALLAN at P.O. Box 1107, Greensburg, PA 15601 for fireworks they received weighing between 500 and 1,000 pounds in total. According to USPS records, P.O. Box 1107, Greensburg, PA 15601 was registered to ALLAN's wife, Amber Allan, during the applicable timeframe.

11. Per USPIS, between June of 2020 and June of 2022 there have been at least 254 packages sent from Pennsylvania to Hawaii that fit the description of aforementioned searched packages believed to have been shipped by ALLAN. These packages total approximately 7,611 pounds of suspected fireworks/explosives shipped illegally through the USPS.

12. On February 14th, 2023, Honorable United States Magistrate Judge Cynthia Reed Eddy authorized a federal search warrant of ALLAN's residence, located at 2105 Old State Highway 711, Jones Mills, Pennsylvania 15646.
The search warrant was executed on February 17, 2023, by multiple law enforcement entities including but not limited to the USPIS, IRS-CI, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

13. During the search of ALLAN's residence, law enforcement seized a large quantity of fireworks, a USPS receipt, two ledgers, an owe sheet, $26,580.00 in United States Currency, and a pistol with corresponding ammunition, which ALLAN is prohibited from possessing due to a prior felony criminal conviction.

14. While law enforcement was conducting the search pursuant to the aforementioned warrant, ALLAN returned to his residence and consented to an interview with law enforcement. ALLAN admitted he had been purchasing fireworks from a wholesaler and reselling them to customers in Hawaii for profit. ALLAN explained fireworks are illegal to possess on the islands of Hawaii, which is what made his reselling profitable. ALLAN stated he shipped the fireworks to customers in USPS flat rate boxes and lied on the USPS declaration regarding the contents of the package. ALLAN claimed he did this to maximize profits. Had ALLAN shipped the fireworks via a carrier other than USPS and declared their hazardous nature, the shipping cost would have been much more expensive and local authorities would have been more likely to intercept them.

15. ALLAN stated he had been selling fireworks to customers in Hawaii for approximately four years. At first, he sold fireworks on www.ebay.com (eBay) but, at some point, eBay began to tighten restrictions on fireworks sales. At that time, ALLAN moved his sales to

the Instagram platform, where he admitted operating under the moniker of "PAPYRO." ALLAN told investigators a vast majority of his communications with purchasers of fireworks occurred on Instagram as opposed to via telephone or text message. In these Instagram communications, ALLAN discussed the fireworks he had available for purchase, the prices, and method of payment. ALLAN told investigators he accepted payment for fireworks by cash parcel to a USPS post office box or via online transactions with Venmo or PayPal.

16. During the interview, in reference to fireworks sales to customers in Hawaii, ALLAN stated "I know what I was doing was wrong, but I was doing it to make ends meet."

17. ALLAN admitted in the interview he did not tell his tax return preparer about the proceeds derived from fireworks sales because he primarily operated in cash. By willfully failing to disclose all sources of income to his tax return preparer, ALLAN caused false federal income tax returns to be prepared and ultimately filed with the IRS in violation of 26 U.S.C. 7206 (1).

18. A review of federal income tax returns filed with the IRS confirmed ALLAN did not claim any income from the sales of fireworks and only reported W-2 income in tax years 2020, 2021, and 2022. In tax year 2021 ALLAN reported on his federal income tax return to have earned $39,458.00. This reported income figure is directly attributable to two forms W-2 filed with the IRS for the 2021 tax year. One was issued from ALLAN's employer, C-K Composite Company, LLC, in the amount of $39,042.00. The second was issued by AUL Disability, LLC in the amount of $416.00.  The investigation has revealed no less than $160,479.16 in deposits were made to ALLAN's bank accounts in 2021 including significant sums sent to him via PayPal and Venmo.

19. ALLAN admitted he made false business insignia with a fake return address to affix to the exterior of the fireworks packages he shipped in order to obscure their true origin.

20. ALLAN said at his busiest he had between twelve and fifteen regular customers, but as of the time of the interview, he had four or five customers he would make regular shipments to.

## BACKGROUND CONCERNING INSTAGRAM

21. Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

22. Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

23. Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

24. Each Instagram account is identified by a unique username chosen by the user.  Users can change their usernames whenever they choose but no two users can have the same usernames at the same time.  Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

25. Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account.  Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality.  For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service.  Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

26. Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users.  Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions.  Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users.  Users can also manually search for friends or associates.

27. Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers,

depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

28. One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

29. Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

30. Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

31. Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

32. In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

33. For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after the content is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

34. Based upon the username selected by ALLAN it is likely the Instagram account in question was primarily if not exclusively used to further the scheme of selling fireworks in furtherance of the aforementioned offences and therefore the risk of obtaining information from or related to uninvolved parties is low.

35. On February 22, 2023, USPIS requested, under 18 U.S.C. § 2703(f), Meta preserve the contents of any communication or file stored by or for the Instagram account operated as PAPYRO for a period of 90 days. Meta responded affirmatively they had taken reasonable steps to preserve the data and provided case number 7616433. On May 12, 2023, IRS-CI special agent Kevin Iwanski Jr. requested Meta extend the preservation of

records for the Instagram account operated as PAPYRO for a period of 90 days. Meta responded affirmatively and provided case number 7810451.

## CONCLUSION

36. Based on the forgoing, I request that the Court issue the proposed search warrant. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Kevin Iwanski Jr.
Special Agent
Internal Revenue Service – Criminal Investigation

Sworn and subscribed to me, by telephone,
Pursuant to Fed. R. Crim. 4.1(b)(2)(A),
this 21st day of June 2023.

_____
HONORABLE LISA PUPO LENIHAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with an Instagram account that utilized the name PAPYRO on, among other days, February 17, 2023, that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Meta. Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

- A. All business records and subscriber information, in any form kept, pertaining to the Account, including:

    1. Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

    2. All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

    3. Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

    4. Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

    5. Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from January 1, 2019, until February 17, 2023;

    6. Privacy and account settings, including change history; and

    7. Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

- B. All content (whether created, uploaded, or shared by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles,

posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from January 1, 2019, until February 17, 2023;

C. All content, records, and other information relating to communications sent from or received by the Account from January 1, 2019, until February 17, 2023, including but not limited to:

    1. The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

    2. All records and other information about direct, group, and disappearing messages sent from or received by the Account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

    3. All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

    4. All associated logs and metadata;

D. All content, records, and other information relating to all other interactions between the Account and other Instagram users from January 1, 2019, until February 17, 2023, including but not limited to:

    1. Interactions by other Instagram users with the Account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

    2. All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

    3. All contacts and related sync information; and

    4. All associated logs and metadata;

E. All location information, including location history, login activity, information geotags, and related metadata from January 1, 2019, until February 17, 2023.

F. All Meta Pay transaction data between the account and other Meta users including but not limited to payment requests, payments received, transaction amounts, notes made by payor or payee, and external funding account information to include routing and account numbers.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence, or instrumentalities of violations of 26 U.S.C. § 7206(1) Fraud and False Statements, specifically as it pertains to the filing of false federal income tax returns with the Internal Revenue Service and 18 U.S.C. § 1716(a), Injurious Articles as Nonmailable, those violations involving JOHN W ALLAN JR and occurring after January 1 , 2019 through February 17, 2023, including, for each account or identifier listed on Attachment A, the following:

(a) Records showing any and all income received by ALLAN and/or the operator of PAPYRO, to include all messages discussing payment amounts or methods of payment.

(b) Records discussing the sale and shipment of fireworks from the Commonwealth of Pennsylvania to the state of Hawaii by ALLAN and/or the operator of PAPYRO Instagram account, including all messages discussing such sale and/or shipment and all posts or messages advertising such sale and/or shipment.

(c) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner; the account owner's state of mind as it relates to the crime under investigation.

(d) Records showing the account owner's state of mind as it relates to the crimes under investigation, to include all records relating to the legality or illegality of fireworks in Hawaii, the limits on shipping fireworks through the USPS or other carrier, and/or the owner of the account's responsibility to report all fireworks income on their federal income tax returns.

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(f) The identity of the person(s) who communicated with the user ID PAPYRO about the sale of fireworks, including records that help reveal their whereabouts.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b. such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

   1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

   2. the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                Signature